Argued and submitted January 7, decision of Court of Appeals and judgment of
circuit court reversed; case remanded to circuit court for further proceedings
July 9, 1999, appeal and review dismissed by order dated March 21, 2000
(330 Or 138)

Judith GRIJALVA,
*Petitioner on Review,*

*v.*

SAFECO INSURANCE COMPANY OF AMERICA,
a Washington corporation,
*Respondent on Review,*

SAFECO INSURANCE COMPANY OF AMERICA,
a Washington corporation,
*Cross-Appellant,*

*v.*

Judith GRIJALVA
and Robert Grijalva,
*Cross-Respondents,*

*and*

Carol S. EDWARDS
and Larry Edwards,
*Third-Party Defendants.*

(CC 95-SV-0296-AB; CA A94209; SC S45472)

985 P2d 784

Bruce J. Brothers, of Brothers & Ash, Bend, argued the cause and submitted the brief for petitioner on review. With him on the brief was Brian Chenoweth, of Rycewicz and Chenoweth, Portland.

Brian L. Gingerich, of Karnopp, Petersen, Noteboom, Hansen, Arnett & Sayeg, LLP, Bend, argued the cause and filed the response for respondent on review.

Charles Robinowitz and Dean Heiling, Portland, filed briefs for *amicus curiae* Oregon Trial Lawyers Association.

Before Carson, Chief Justice, and Gillette, Van Hoomissen, Durham, and Kulongoski, Justices.**

GILLETTE, J.

---

** Leeson and Riggs, JJ., did not participate in the consideration or decision of this case.

## GILLETTE, J.

This is an action for breach of an automobile insurance contract. The primary issue before this court concerns the proper method for calculating the amount of underinsured motorist (UIM) benefits payable to an individual claimant under a so-called "single-limit" policy, when other persons injured in the same accident also are seeking benefits under the policy.[1] The trial court ruled, and the Court of Appeals agreed, that, when the individual's damages equal or exceed the policy limit, the individual's award should be calculated by subtracting from the policy's UIM limit the amounts recovered from other sources by the individual and all the other claimants. However, for the reasons that follow, we conclude that those courts were incorrect and that the claimant's UIM proceeds should be calculated by subtracting from the policy limit only those amounts recovered by the claimant from other sources.

There is no dispute about the relevant facts. Plaintiff and a coworker, Edwards, were driving together in Edwards' car when the car was struck by a car driven by Dawson. Plaintiff was injured and suffered damages in excess of $100,000.

At the time of the collision, Dawson had a liability insurance policy that provided combined single-limit liability coverage in the amount of $60,000. Plaintiff received $42,000 out of that policy while Edwards, who also had been injured, received $18,000. Plaintiff and Edwards also received workers' compensation benefits because of their injuries. Plaintiff received $14,877.02 in unreimbursed workers' compensation benefits from the accident; Edwards received $3,846.59.

Because neither plaintiff nor Edwards were made whole by the foregoing recoveries, both filed claims under the UIM provisions of Edwards' automobile insurance policy. That policy, which defendant Safeco had issued, provided UIM coverage up to a single limit of $100,000. Safeco paid Edwards $4,755.37 on her claim; it denied plaintiff's claim.

---

[1] In a "single-limit" policy, the limit on the insurer's per-person liability is identical to its per-accident liability. In the present case, the per-person and per-accident limits both were $100,000.

Plaintiff then filed the present action against Safeco, alleging breach of the insurance policy and seeking (after amendment) $58,000 in damages. Plaintiff claimed that, because her injuries exceeded the UIM policy's $100,000 single limit, she was entitled to the full $100,000, less only the $42,000 that she had received from Dawson's liability policy.[2]

Safeco answered, denying liability in that amount. It also counterclaimed, seeking a declaration that the maximum benefits available under the policy were $16,521.02, together with an order allowing it to deposit that amount with the clerk of the court and directing plaintiff and Edwards to resolve their claims under the policy based on that amount. Safeco's theory was that, because there was more than one claimant seeking UIM coverage for the same accident, plaintiff's award should equal the amount of the policy limit ($100,000) minus any amounts that *all* the claimants (*i.e.*, plaintiff *and* Edwards) had recovered from other sources. Specifically, Safeco proposed that the following items were proper reductions: (1) the $4,755.37 already paid to Edwards out of the UIM policy; (2) the $60,000 paid to plaintiff and Edwards under Dawson's liability policy; (3) the $14,877.02 paid to plaintiff by her employer's workers' compensation carrier; and (4) the $3,846.59 paid to Edwards on her workers' compensation claim.

After motions for summary judgment, the trial court entered judgment for Safeco on its declaratory relief claim and awarded plaintiff the $16,521.02 in benefits that Safeco had argued was available. The trial court also entered judgment for Safeco on plaintiff's claim and denied Safeco's interpleader claim. The court denied the parties' competing claims for attorney fees, concluding that no party had prevailed on a claim that would allow an award of attorney fees.

Plaintiff appealed, assigning error to a number of items that the trial court had accepted as proper offsets against her UIM recovery, *viz.*, (1) Edwards' recovery from Dawson's liability policy; (2) Edwards' workers' compensation recovery; and (3) plaintiff's own workers' compensation

---

[2] Plaintiff argued at that time that her workers' compensation recovery was not a proper offset.

recovery. Plaintiff also assigned error to the trial court's denial of her claim for attorney fees. The Court of Appeals concluded that the trial court had not erred in any respect that plaintiff had argued and affirmed. *Grijalva v. Safeco Ins. Co.*, 153 Or App 144, 956 P2d 995 (1998).

In this court, plaintiff has abandoned any claim that her own recovery from her employer's workers' compensation carrier was an impermissible offset. However, plaintiff continues to press her argument that her UIM recovery cannot be reduced by Edwards' recoveries from other sources, *i.e.*, from Dawson's liability policy or from workers' compensation. She contends that the relevant statutes (*i.e.*, those that provide minimum requirements for UIM insurance) are clear on that score—that a UIM insurer's liability for a claimant's injuries is to be reduced only by the amounts that the *claimant* has received from other sources. In so arguing, plaintiff particularly relies on two statutes, ORS 742.502(2)(a) and ORS 742.504(7)(c), both set out *post*.

Safeco acknowledges that the two statutes identified by plaintiff are the relevant point of departure. However, Safeco contends that, contrary to plaintiff's view, those statutes unambiguously provide that a claimant's UIM recovery is to be reduced by the total amount paid by the tortfeasor's liability insurer or in workers' compensation to *all* insureds.

We agree with the parties that resolution of the present controversy lies in the proper interpretation of ORS 742.502(2)(a) and ORS 742.504(7). ORS 742.502(2)(a) is the general UIM mandate. It requires the inclusion of UIM coverage in any policy that provides uninsured motorist (UM) coverage in excess of the financial responsibility amounts and provides the following general formula for calculating UIM benefits:

"Underinsurance benefits shall be equal to uninsured motorist coverage benefits *less the amount recovered from other automobile liability insurance policies.*"

(Emphasis added.)

ORS 742.504(7) describes the limits of the insurer's liability for both UM and UIM coverage and also sets out the

permissible reductions or offsets from such coverage. It provides, in relevant part:

> "(a) The limit of liability stated in the declarations as applicable to 'each person' is the limit of the insurer's liability for all damages because of bodily injury sustained by one person as the result of any one accident and, subject to the above provision respecting each person, the limit of liability stated in the declarations as applicable to 'each accident' is the total limit of the company's liability for all damages because of bodily injury sustained by two or more persons as the result of any one accident.

> "\* \* \* \* \*

> "(c) Any amount payable under the terms of this coverage *because of bodily injury sustained in an accident by a person* who is an insured under this coverage shall be reduced by:

> "(A) *All sums paid on account of such bodily injury by or on behalf of the owner or operator of the uninsured vehicle* and by or on behalf of any other person or organization jointly or severally liable together with such owner or operator for such bodily injury including all sums paid under the bodily injury liability coverage of the policy; *and*

> "(B) *The amount paid and the present value of all amounts payable on account of such bodily injury under any workers' compensation law*, disability benefit law or any similar law."[3]

(Emphasis added.)

As noted, the parties assign differing meanings to those statutes and, in particular, to the phrase "on account of such bodily injury" in ORS 742.504(7)(c)(A) and (B). Plaintiff contends that that phrase unambiguously refers to a single bodily injury—the individual claimant's—and that, consequently, the "amount" or "sums" paid "on account of such bodily injury" are amounts that are paid to that individual claimant. Safeco contends, on the other hand, that, where there is more than one UIM claimant, "such bodily injury" refers to the injuries sustained in the accident by all claimants. Thus,

---

[3] ORS 742.504 originally was enacted with UM insurance in mind. It was made applicable to UIM coverage by ORS 742.502(4).

Safeco maintains, ORS 742.504(7)(c)(A) and (B) direct that an individual claimant's recovery be reduced by the amounts paid to *all* the claimants who were injured in a given accident.

To determine which interpretation is correct, we employ the framework set out by this court in *PGE v. Bureau of Labor and Industries*, 317 Or 606, 859 P2d 1143 (1993). *PGE* directs us to focus first on text and context, and to stop there if those sources make the legislature's intent clear. *Id.* at 610-11.

By itself, the phrase "on account of such bodily injury" does not resolve the controversy. Although, in ordinary parlance, "injury" can refer to a single wound or harm, it seems clear that, in this context, "bodily injury" also could mean an aggregation of such individual injuries. Nothing in the phrase itself indicates whether the legislature conceived of that aggregate meaning in terms of the various injuries suffered by an individual claimant or in terms of the injuries suffered by *all* claimants who were involved in a single accident.

We are persuaded, however, that the legislature's intent in that regard easily can be determined from the rest of the text of the statute, that is, by reading ORS 742.504(7)(c) and its subsections as a connected whole. When read in that manner, ORS 742.504(7)(c) provides that "[a]ny amount payable under the terms of this coverage because of *bodily injury sustained in an accident by a person* who is an insured under this coverage shall be reduced by * * * (A) [a]ll sums paid on account of *such bodily injury* by or on behalf of the owner or operator of the uninsured vehicle * * *; and * * * (B) [t]he amount paid * * * on account of *such bodily injury* under any workers' compensation law." (Emphasis added.) When the provision thus is read as a whole, it is clear that "such bodily injury" in subparagraphs (A) and (B) refers back to the phrase "bodily injury sustained in an accident by *a* person who is an insured under this coverage" (emphasis added) in paragraph (c). The use of the singular—"a person"—shows that the legislature was referring to the individual claimant. It also is clear that, under the statute, "amounts payable" to that person are to be reduced by the

sums paid for "such bodily injury," *i.e.*, the individual claimant's injury, paid *to that person* out of the tortfeasor's liability policy or out of workers' compensation on account of *that person's* injuries.

Safeco rejects that textual reading, arguing that other textual and contextual clues support a contrary interpretation of the statutes. It notes, for example, that the phrase "amount recovered" in a different UIM statute, ORS 742.502(2)(a) (UIM benefits equal UM benefits "less the amount recovered from other automobile liability insurance policies"), is not qualified in any way. Safeco holds up that lack of qualification as a clear indication that the legislature intended that a plaintiff's recovery be reduced by the *total* amount recovered from a tortfeasor's liability policy. However, we agree with plaintiff that the absence of any qualification in ORS 742.502(2)(a) has no affirmative significance, particularly where the absent detail (*i.e.*, indication by whom the amount is recovered) is filled in by another statute, ORS 742.504(7)(c)(A).

Safeco also places an emphasis on ORS 742.504(7)(a), which provides for, and distinguishes between, an "each person" and "each accident" policy limit. Safeco contends that that provision defines the "amount payable" for purposes of ORS 742.504(7)(c). Safeco further suggests that the provision creates two mutually exclusive "categories" of benefits, based on the two types of policy limits and, ultimately, on the number of insureds who file UIM claims. Safeco's position in that regard is summarized in the opinion of the Court of Appeals:

> "An insured is entitled to recover from only one category of UIM benefits following an accident—either the 'each person' limit or the 'each accident' limit of liability. ORS 742.504(7)(a). The category of UIM benefits to which an insured is entitled depends on the number of insureds making claims against the UIM policy. If only one insured makes a claim for UIM benefits, the category is the 'each person' limit. If more than one insured makes a claim for UIM benefits, each claimant's maximum recovery is the 'each person' limit, subject also to the 'each accident' limit. * * * *In cases where the 'each person' limit multiplied by the number of claimants equals or exceeds the 'each accident'*

*limit of the UIM policy, all claimants are entitled to benefits from the 'each accident' category, and all applicable offsets for each claimant are deducted from that category."*

*Grijalva,* 153 Or App at 150 (emphasis added).

We are not persuaded by Safeco's reasoning. There is nothing in ORS 742.504(7)(a) or, to our knowledge, anywhere else in the underinsurance statutes, that suggests that, when more than one insured files a claim, an individual claimant's recovery comes from a separate, "each accident category." In fact, ORS 742.504(7)(a) clearly indicates that the "each person" limit always is relevant, even when two or more persons sustain injuries in an accident. Under ORS 742.504(7)(a), the "each accident" limit is "subject to the above provision respecting each person." Although that does not mean that the insurer ever is required to pay *more* than the "each accident" limit, it does indicate that the "each person" limit remains relevant, regardless of the number of persons involved.

Ultimately, we are persuaded that the legislature's intent is clear from text and context. ORS 742.504(7)(c) unambiguously provides that the amount payable to an individual insured is to be reduced only by amounts paid *to the insured* on account of the *insured's* bodily injury by or on behalf of the liable party or a workers' compensation carrier. Nothing in ORS 742.504(7)(a) or ORS 742.502(2)(a) fairly suggests a different meaning.

In the present case, the trial court reduced plaintiff's UIM recovery by the amounts that another claimant, Edwards, had received from Dawson's liability insurer and from Edwards' employer's workers' compensation carrier. Those reductions were not authorized by the UIM statute. On remand, the court should reduce plaintiff's recovery only by the amounts that plaintiff recovered on account of her injuries from workers' compensation and Dawson's liability policy.

That brings us to the second question raised in plaintiff's petition, *viz.,* whether plaintiff is entitled to attorney fees under ORS 742.061. That statute provides:

> "If settlement is not made within six months from the date proof of loss is filed with an insurer and an action is brought in any court of this state upon any policy of insurance of any kind or nature, and the plaintiff's recovery exceeds the amount of any tender made by defendant in such action, a reasonable amount to be fixed by the court as attorney fees shall be taxed as part of the costs of the action and in the appeal thereon."

The Court of Appeals concluded that ORS 742.061 did not apply, because Safeco had "tendered" an amount *equal* to the $16,521.02 judgment (which the Court of Appeals affirmed) in its amended answer and third-party complaint. Obviously, given our conclusion that the $16,521.02 judgment was erroneous, that reasoning no longer can support the decision that plaintiff's claim for attorney fees properly was denied.

The decision of the Court of Appeals is reversed. The judgment of the circuit court is reversed. The case is remanded to the circuit court for further proceedings.